v. Jefferson B. Sessions III, former Attorney General of the United States, et al. K.O. by and for their parents and ex-friends, E.O. and L.J. et al., appellants, v. Jefferson B. Sessions III, former Attorney General of the United States, et al. Mr. Cacase for the appellants, Mr. Byron for the appellants. Good morning, Mr. Cacase. You can proceed. Good morning, Your Honors, and may it please the Court. Joseph Cacase on behalf of the plaintiff's appellants. The plaintiffs are children who were brutally and forcibly separated from their parents at the border after entering the United States seeking asylum from dangerous and life-threatening conditions in their home country here, Guatemala. The plaintiffs here seek to hold the defendants liable in damages for that conduct, for forcibly separating them and thousands of other young children similarly situated from their parents while held in immigration detention after coming to this country seeking asylum from dangerous and life-threatening conditions in their home countries, which were mostly in South and Central America. Excuse me. Isn't it true that the plaintiffs in this case have also brought up charge claims, Zach? Yes, that's correct, Your Honor. We initially sought leave. From the newspapers, I gather that's in negotiation with the Justice Department. It no longer is, Your Honor. It was, but no longer is. Oh, but it's proceeding as a federal tort claims act. Correct. Correct. We are our federal tort claims. We sought to amend to include in this case that's on appeal before the court. However, Judge Contreras denied our motion for leave and suggested instead that we file a new action for various procedural reasons, which we've done. So that tort claims act case is pending in Massachusetts with a motion to dismiss expected from the government later this month. Oh, doesn't that satisfy one of the factors that the Supreme Court looks at in Bivens action? Whether there's a other method of seeking relief. And sometimes the court will look to equitable relief as adequate, even when damages are sought. But here you have damages and damages. Sure. So thank you, Your Honor. Let me address that in two ways. First, those factors are only relevant if what you're dealing with is a new context. And as we argue here, at least three of the claims are not a new context. But and I can come back to that. But to address Your Honor's question, assuming the context is new, a tort claims, a tort claim remedy is not a inadequate alternative remedy, even under the Supreme Court's case law. And there's a few reasons for that. First, the tort claims act itself includes an exception and express exception in Section B to a for constitutional claims. Excuse me. I point to that. That means Congress didn't wish to preempt that. But that's still totally up to a judiciary as to whether a Bivens action is appropriate. And certainly that statute is referring to doesn't indicate whether Bivens acts are appropriate or not. Correct. Correct. But but what it does recognize and what the Supreme Court and Carlson has said and reaffirmed and we versus Castaneda is that it's crystal clear, as Carlson held that Congress views the tort claims act and Bivens claims as parallel complementary causes of action if if recognized. And one of the critical distinctions here is that a tort claim, of course, is against the United States. A Bivens action is against the individuals responsible for the conduct at issue. And so where Bivens and its subsequent cases, including Ziegler versus Abbasi, recognize that the two purposes of a damages remedy and it damages action are one to provide a does not have the same deterrent effect that a an action proceeding against the individual does. So for all for those reasons, Your Honor. Yes, there are tort claims act claims pending, but those are not sufficient to counsel hesitation. Those while that while that is true, it's not a special factor that's sufficient to counsel hesitation here. And if I could also have APA claim in claim for injunctive relief that are available to you. Right. And the Supreme Court in in Abbasi said that, you know, if equitable remedies proven sufficient, a damages remedy might be necessary to redress past harm and future violations. And I would point to the fact that the same counsel that has obtained some of the nationwide injunctions against tort claims. Including in Mizzell in California on these very issues have filed a did file a Bivens action as well as tort claims separately, precisely for that reason, because injunctive relief does not does not provide relief for prior harm and doesn't deter future violations. The Administrative Procedure Act. Again, it was a basis for correcting some of some of the problems and a way to reunify families, but the Administrative Procedure Act doesn't provide a damages remedy provides no way to remedy past harm. And it's really it's focused on correcting procedural errors. And if you look at the Supreme Court's and this court's cases, relying on the Administrative Procedure Act as an alternative remedy. Those cases typically involve things like the grant or denial of a license or, you know, permission or not to do something that can be remedied via an APA claim. The harm that's at issue here trauma caused to these children from being brutally and forcibly separated from their families is not something that can be adequately or remedied or remedied at all just from reunification. I mean, we've alleged in the complaint widespread consensus among experts, the American Pediatric Association and others about the long term harm and trauma that's expected to linger based on the defendant's conduct here. If, if I could before before the court even gets to that, though, there are three claims here that really don't present a new context and therefore a special factors analysis isn't necessary. And those three are the three that are most parallel to and similar to the Supreme Court's the cases that the Supreme Court has upheld damages claims in being biddings, which is which upheld the claim in the Fourth Amendment search and seizure context. And we have a, an unconstitutional seizure claim here, Davis versus passman which dealt with equal protection violations under the Fifth Amendment due process clause, we have a similar equal protection claim under the Fifth Amendment here, and then Carlson your honor we argue are not in a new context and don't even require a special factor analysis. Now I recognize that I'm into my rebuttal time, I'm happy to continue answering the court's questions and to continue addressing our arguments if that would be helpful, but I'll defer to defer to the court. Just any of my colleagues have any further questions for counsel for Pellon at this time. Okay. All right. Why don't you reserve this time for rebuttal then, and we'll hear from Mr Byron. Please the court. Thomas Byron from the Department of Justice here on behalf of the individual federal defendants. In this case, the district court here faithfully applied Supreme Court precedent and correctly dismiss the individual capacity damages claims brought by plaintiffs in this case. As the court recognized the new context inquiry here is not a close call. The Bivens claims against high level executive officers concerning immigration enforcement policies ineluctably present a new context. And in that in a new context when a court is being asked to extend Bivens. The question as the Supreme Court emphasized in both a bossy and Hernandez is who should decide courts or Congress, and the answer most often will be Congress as the court said in a bossy and as in Hernandez. That is undoubtedly the answer here. That's so because there are multiple special factors that counsel hesitation before the courts undertake the legislative responsibility of balancing costs and benefits to create a new damage. There are multiple comprehensive alternative processes available, including the Immigration Nationality Act, the Trafficking Victim Protection Reauthorization Act. The APA and injunctions as indeed several plaintiffs have sought relief successfully in those kinds of claims. And Bivens is just not a proper vehicle for altering an entity's policy or inquiring into policymaking decisions that would create an intrusion into the sensitive functions of the executive branch. Also, Congress's attention in this area, both generally in immigration and specifically with respect to the claims that plaintiffs abroad has been frequent and intense with the court noted in a bossy and congressional inaction was not inadvertent. Other separation of powers concerns similarly counsel hesitation and create further reason to support the district court's decision to dismiss here. The plaintiff's argument did not address the statutory conspiracy claims. I'd be happy to answer the court's questions, but otherwise would rest on our brief to address those issues. If the court has no questions, we urge you to affirm the judgment below. Thank you. What about the argument of your friend on the other side that the whole, I guess, bevy of remedies are not sufficient, given the type of harm that the plaintiffs are alleging here and that they seek redress for? Judge Wilkins, I think that misunderstands the separation of powers concerns that the Supreme Court has emphasized in its recent decisions in this area. So, while the plaintiff's argument is that retrospective harm cannot be remedied by prospective relief, that's true as well in the kinds of claims that the plaintiffs brought in Hernandez specifically, where the claim was the killing of a youth across the border. And there's no doubt that that harm could not itself be remedied prospectively. And yet the Supreme Court noted that Congress is in action in declining to create a damages remedy against individual federal officers was itself significant because of the separation of powers concerns that drive the analysis in determining whether the courts or Congress could be charged with balancing the costs and benefits of determining whether to create a new damages remedy. Of course, that argument could be seen as an attack on Bivens itself. You don't want to do that, do you? No, no, Your Honor, we don't. And we don't think it's necessary for this court to address that question. Well, we wouldn't be able to anyway. Of course. But is there, don't you get, does one get the impression reading Justice Kennedy's opinion in Abbasi that it's really unlikely the Supreme Court is going to authorize any new Bivens actions that don't fall within the exact category of Bivens, Carlson and Fassman? Well, Judge Silberman, I think what the Abbasi opinion makes clear is that there is a context-specific analysis required in any new Bivens claim, in any new individual capacity damages claim. And that two-step framework that the court set out in Abbasi and reaffirmed in Hernandez makes clear that the context of each case is important. You're not answering my question. As a lawyer arguing for the government, would you agree that from Kennedy's opinion, you get the distinct impression the Supreme Court is not going to go beyond the three examples they already have authorized? No, Judge Silberman, I don't think it's fair to read the opinion that broadly. And I think that question is presented in the pending case in Belay against Egbert right now. We'll see what the court says about it. But again, I just want to reiterate, I think the framework the court established in Abbasi is very clear. And its application in this case is quite straightforward, as the district court explained. Fair point. Thank you, Your Honor. Further questions? Thank you. Thank you, counsel. We'll give Mr. Cacase two minutes in rebuttal. Thank you, Your Honor. And if I can use part of my time here to address the statutory claims, since we didn't get to them before, I'd like to do that just very briefly. And the only issue on appeal on the Section 1985 and 1986 claims is whether the defendants are entitled to qualified immunity. It's, of course, their burden to establish that. And it fails really for three reasons. First, the question, the operative question, as the Supreme Court made clear in Tolan v. Cotton, is whether the defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known. Here, and under 1985, the question really is whether the equal protection allegation is clearly established. Here it is, and we included in our brief arguments on why the equal protection claim is clearly established. And so that's what's relevant. What's relevant is the right, whether a constitutional right was clearly established and a violation of that right was clearly established. The precise statutory theory of liability is not what's relevant to the qualified immunity analysis. And so, you know, looking through every element of 1985 to see if it was clearly established is not what's required. But even if it is, it's very clear that a conspiracy, the intercorporate conspiracy doctrine only applies when you're dealing with a single entity. And so in this context, that would be, as an Abassi, a single department or a single agency of the executive branch. But that's a disputed issue, is it not? Well, the defendants, Judge Silverman, have not pointed to any cases in which a court has held or even questioned whether multiple federal agencies could conspire together under Section 1985. It's only in situations and Abassi didn't deal with that. Abassi only addressed that question because it was presented with the issue of whether individuals within the Department of Justice could conspire with each other within one single entity. The cases like the Constitution creates a single executive branch, right? All executive powers vested in the president, that's arguably one constitutional entity. Correct. It creates one branch, but for purposes of analyzing whether a conspiracy exists between federal officials in different branches, which are treated in the law as different entities. I mean, if a case is brought against an agency, it's filed against that agency or sometimes the head of that agency and not against the United States. So I think it's clear if you look at the cases and even the district court cases in this district, like Tripp versus Executive Office of the President, Lerner versus District of Columbia, where they hold that the intracorporate conspiracy doctrine applies, you're dealing with people outside of one department and oftentimes people outside of the government, which we actually address, which we include in our allegations here. If you look at paragraph 30 of- Of course, Judge Vural recently wrote an opinion. You have to serve, if you're suing the Department of Agriculture, you have to serve the Justice Department. Reflecting her view that after all, we're talking about a unitary executive. Sure. Well, Your Honor, I think, I mean, notice needs to be given to the Department of Justice who would be responding to that on behalf of the agency. But I don't know that it necessarily changes the analysis. But the other fact, important fact here, is that we also allege in the amended complaint in paragraph 30 that private contractors, ORR, Office of Refugee and Resettlement Contractors, were involved here. They were involved in the conduct and were involved in the conspiracy. And there's no question that to the extent that's the case, the intracorporate conspiracy doctrine wouldn't apply. And then finally, just very briefly, there is a clearly established official misconduct exception to the intracorporate conspiracy doctrine, which would apply here based on the allegations in the complaint. So with that, Your Honors, I'll rest on our briefs unless there are further questions. And just respectfully request that the court recognize the historic wrong that was done here and allow this case to go forward to remedy the enormous harm and long lasting trauma that was done to the plaintiffs and other children forcibly separated from their families and to deter this from ever happening again. Thank you. Thank you. We have your argument. I will take the case under submission.
judges: Wilkins, Rao, Silberman